**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**UNITED STATES OF AMERICA**,

v.

**DUSTIN LEE HENDERSON**,

Defendant.

Case No. 3:20-cr-00022-IM

**OPINION AND ORDER**

Natalie K. Wight, United States Attorney, Craig J. Gabriel and Cassady Anne Adams, Assistant United States Attorneys, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for the United States.

Per Olson, Hoevet Olson, PC, 1000 SW Broadway, Suite 1740, Portland, OR 97205. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Defendant Dustin Lee Henderson was charged in a superseding indictment with interference with commerce by threats or violence in violation of 18 U.S.C. § 1951, possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF 76. After a three-day trial, a jury returned a verdict of guilty on all counts. ECF 122. Before this Court is Defendant's Motion for New Trial. ECF 154. For the reasons set forth below, Defendant's Motion for New Trial is DENIED.

**STANDARDS**

Federal Rule of Criminal Procedure 33 provides that a court, on the motion of a defendant, "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. A court may set aside a verdict and grant a new trial when "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (citation omitted). The decision to grant or deny a motion for a new trial is "within the sound discretion of the district court." *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985); *see also A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d at 1211 ("A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."). A motion for a new trial must be filed within fourteen days unless the motion is based on newly discovered evidence. Fed. R. Crim. P. 33(b). However, Federal Rule of Criminal Procedure 45 allows a court to extend deadlines on its own or for good cause on a party's motion in two circumstances: (1) before the originally prescribed or previously extended time expires, or (2) after the time expires if the party failed to act because of excusable neglect. Fed. R. Crim. P. 45(b)(1)(A)–(B).

**BACKGROUND**

On November 22, 2019, Defendant robbed the Lighthouse Pub in Clackamas, Oregon. ECF 161 at 2. He brandished a firearm, stole multiple packets of cigarettes, and then fired the firearm as he fled. *Id*. On January 22, 2020, a federal grand jury returned an indictment charging Defendant with interference with commerce by threats or violence, possession of a firearm in furtherance of a crime of violence, and felon in possession of a firearm. *Id*.

On March 9, 2020, Assistant Federal Public Defender Fidel Cassino-DuCloux was appointed to represent Defendant. ECF 8. After several continuances due to the COVID-19

pandemic, Defendant sought to dismiss Mr. Cassino-DuCloux as his attorney. ECF 25; ECF 27. Chief Judge Marco Hernandez held a hearing regarding Defendant's representation—Defendant argued that Mr. Cassino-DuCloux had failed to notify the Court that he had been "falsely accused" and that he wanted an attorney that specialized in Fourth Amendment violations. ECF 134 at 7–8. Judge Hernandez granted Mr. Cassino-DuCloux's motion to withdraw. *Id.* at 10. He appointed CJA panel attorney Joanna Perini-Abbottt and assured Defendant that everyone on the panel is familiar with Fourth Amendment issues. *Id.* at 12; ECF 27; ECF 28.

In September 2021, Judge Hernandez held a status conference at Ms. Perini-Abbott's request. Ms. Perini-Abbott stated that she believed she and Defendant had come to an impasse that would require her withdrawal, but upon further conversation with Defendant, he expressed that he did not wish for her to withdraw. ECF 159, Ex. 1 at 3. However, Defendant stated that he wanted this case to "slow down," and Ms. Perini-Abbott asked for additional time to file motions, which Judge Hernandez granted. *Id.* at 3–5.

Subsequently, the relationship between Ms. Perini-Abbott and Defendant apparently soured, and Defendant attempted to file motions to remove Ms. Perini-Abbott as his attorney, and Ms. Perini-Abbott filed a motion to withdraw. ECF 45; ECF 46. In November 2021, Judge Hernandez held a hearing on that motion. Ms. Perini-Abbott indicated that she was willing to continue to represent Defendant and would continue to work diligently on the case. ECF 159, Ex. 2 at 6–11. Judge Hernandez found that Defendant's motions were "frivolous" and "wasteful," *id.* at 13, and that Ms. Perini-Abbott had done "a competent job," concluding that there is "nothing in the record that tells me otherwise other than you don't want to work with her," *id.* at 13–14.

In February 2022, Judge Hernandez held another status conference at Ms. Perini-Abbott's request. ECF 63; ECF 66. Ms. Perini-Abbott informed the Court that Defendant had stopped

communicating with her. ECF 161 at 5. Defendant stated that he had been "frame[d]" and that the police report was false, "poisoning" Ms. Perini-Abbott's review of the case. ECF 159, Ex. 3 at 12–13. He maintained that Ms. Perini-Abbott had failed to notify the Court that he had been falsely arrested and stated again that he wanted this case to "slow down." *Id.* Judge Hernandez found that Ms. Perini-Abbott had filed what she believed in her professional judgment to be the only viable motions in this case and that she was competent and ready for trial. *Id.* at 15–17. Judge Hernandez concluded that removing Ms. Perini-Abbot would only cause further delay, but appointed Sam Kauffman as a second opinion lawyer. *Id.* at 18–19.

In March 2022, Judge Hernandez held an evidentiary hearing on Defendant's motion to suppress. ECF 71. Judge Hernandez concluded that while the protective sweep of Defendant's home was not justified, it did not taint the subsequent, lawful search of the home. ECF 161 at 8. This case was then reassigned to this Court. ECF 84.

In April 2022, Defendant again attempted to remove Ms. Perini-Abbott and Mr. Kauffman as his attorneys. ECF 107. At the pretrial conference, this Court conducted an ex parte hearing with Defendant and his attorneys. Ms. Perini-Abbott stated that Defendant was not accepting calls or mail from her. ECF 159, Ex. 4 at 9. Defendant again raised issues regarding his arrest, which had already been decided at the suppression hearing and about which Ms. Perini-Abbott did not believe she could file valid motions. *Id.* 11–20, 36–39. This Court informed Defendant that Ms. Perini-Abbott is an excellent and honest attorney and had filed the appropriate suppression motion. *Id.* at 11, 29. After an extensive colloquy with this Court, Defendant stated that he would be willing to communicate with Ms. Perini-Abbott. *Id.* at 29. This Court found that Ms. Perini-Abbott was trying to work diligently with Defendant and did not hold any animosity towards him. *Id.* at 31. Moreover, the fact that Ms. Perini-Abbott would

not file what she believed to be meritless motions did not create an irreconcilable conflict between her and her client. *Id.* at 39–40. Accordingly, this Court denied Defendant's motions, and this case proceeded to trial.

A jury trial commenced on April 25, 2022. ECF 111. After the Government rested, this Court conducted another ex parte hearing with Defendant and his attorneys regarding whether Defendant wished to testify. ECF 159, Ex. 5 at 4. Mr. Kauffman informed this Court that Defendant wanted to testify. *Id.* Defendant then stated that his attorneys told him that, "in their professional opinion, it's best if [he] [did not] testify," which was "extremely influencing." *Id.* at 5. This Court assured Defendant that the decision to testify—or not to testify—was Defendant's choice. *Id.* at 6. But this Court also made clear that Defendant was not permitted to testify about the circumstances of his arrest and first search of his home, which were excluded as part of this Court's rulings on pretrial motions in limine. *Id.* at 6; *see* ECF 104. During the colloquy, it became clear that Defendant indeed intended to testify about these topics. *Id.* at 7–9.

Then, this Court asked Defendant if he, knowing this Court's parameters, still wanted to testify. *Id.* at 9. Defendant confirmed that he wanted to testify, but also stated that he needed to "have representation." *Id.* at 9–10. This Court cautioned Defendant that he may be impeached with his prior felony convictions if he took the stand. *Id.* at 10–11. Mr. Kauffman then clarified that any direct examination of Defendant would be "unstructured." *Id.* at 12. This Court again asked Defendant whether we wanted to testify. *Id.* Defendant responded that he had decided it was in his best interest not to testify. *Id*. This Court then confirmed with Defendant that he wanted to waive his right to testify and reminded Defendant that he had been "communicating throughout the trial with [his] lawyers" and that his trial team had been "working in [his] best interest." *Id.* at 13. After a sidebar with the attorneys, this Court clarified with Defendant that his

attorneys have an ethical obligation not to allow improper or false testimony, but that they would ask typical direct examination questions if he chose to testify. *Id.* Defendant responded that this did not change his decision not to testify. *Id.* at 21. The Court assured Defendant that he should not feel pressured one way or the other and that this Court would order his attorneys to ask questions, but that he could not testify about information that had already been excluded. *Id.* at 22–23. Defendant again waived his right to testify. *Id.* at 23. On April 27, 2022, the jury found Defendant guilty on all counts. ECF 117; ECF 122.

In July 2022, Defendant again attempted to remove his attorneys, ECF 128; ECF 129, and Ms. Perini-Abbott filed another motion to withdraw, ECF 125. In August 2022, this Court held a hearing on that motion. ECF 131. Ms. Perini-Abbott stated that Defendant was refusing to speak with her regarding his presentence report. ECF 159, Ex. 6 at 6. This Court informed Defendant that Ms. Perini-Abbott had done a fantastic job at trial. *Id.* at 7–8. Defendant nonetheless maintained that he was denied a "constitutional trial" because he had not been allowed to testify. *Id.* at 8. This Court reminded Defendant that he had indeed been afforded the right to testify. *Id.* Although this Court concluded that the issue seems to be that Defendant finds it difficult to work with others, *id.* at 10, this Court decided to relieve Defendant's attorneys from this case, *id.* at 11, and appointed CJA panel attorney, Per Olsen. ECF 132.

On October 3, 2022, Defendant filed the motion now before this Court. ECF 154. Defendant argues that he is entitled to a new trial. He argues that he was effectively denied counsel because there was a complete breakdown in the attorney-client relationship. *Id.* at 2. He contends that, under these circumstances, he need not prove he was prejudiced at trial to obtain a new trial. *Id.* Alternatively, Defendant argues that he was prejudiced by the breakdown in the attorney-client relationship in that his Fifth and Sixth Amendment rights to testify were

violated—Defendant contends that he waived his right to testify because his attorneys were unprepared for him to take the stand. *Id.* Defendant also argues that his motion is timely because there is (1) excusable neglect or (2) newly discovered evidence. *Id.* at 22–25.

The Government responds that Defendant's motion is time-barred. ECF 161 at 14–15. The Government further argues that a motion for a new trial is not the appropriate avenue for relief, *id.* at 15, 27–28, that any conflict between Defendant and his attorneys was self-created and was not so extensive as to entitle him to new counsel, *id.* at 17–20, and that no Sixth Amendment violation occurred, *id.* at 27.

## DISCUSSION

### A. Timeliness of Defendant's Motion

A motion for new trial must be filed within fourteen days of a guilty verdict, unless it is based on newly discovered evidence. Fed. R. Crim. P. 33(b). If a party misses the fourteen-day deadline, a court may nonetheless consider the motion on the basis of excusable neglect. Fed. R. Crim. P. 45(b)(1)(B). Defendant's trial concluded on April 27, 2022, ECF 122, making his motion for new trial due on May 11, 2022. This motion was filed on October 3, 2022—over four months late. ECF 154. Accordingly, the first issue this Court must address is whether Defendant's motion is time-barred.

#### 1. Excusable Neglect

The Supreme Court has set forth four factors to determine whether neglect was excusable: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 395 (1993)). In *Pioneer*, the Court used this four-factor test to interpret Rule 9006 of the Federal Rules of Bankruptcy

Procedure. However, the Ninth Circuit has applied the *Pioneer* factors to interpret the Federal Rules of Civil Procedure. *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223–24 (9th Cir. 2000). And in an unpublished decision, the Ninth Circuit affirmed the application of the factors to interpret "excusable neglect" in Rule 45 of the Federal Rules of Criminal Procedure to find that a Rule 33 motion for new trial was time-barred. *United States v. Jassal*, 388 Fed. Apx. 748, 750 (9th Cir. 2010). Thus, this Court will rely on the *Pioneer* factors to determine if Defendant's failure to timely file this motion is based on excusable neglect.

Defendant argues the third *Pioneer* factor—reason for delay—is most relevant in this case. ECF 154 at 23. He contends that the breakdown of the attorney-client relationship excuses Defendant's failure to file a motion within the prescribed timeframe. *Id.* Defendant also alleges that his attorneys acted unethically and argues that he should "not be blamed for his attorney not filing a motion calling into question her own adequacy . . . ." *Id.* at 23–24. He also states that he had to order transcripts to adequately prepare this motion. *Id.* at 24. With respect to the remaining *Pioneer* factors, Defendant argues that the is no conceivable prejudice to the Government, that there is no impact on pending proceedings other than sentencing, and that Defendant acted in good faith. *Id*.

The Government responds that Defendant was represented by three previous lawyers, and the fact that a fourth was appointed after the time for filing a new trial motion elapsed does not preclude Defendant's motion from being time-barred. ECF 161 at 14. The Government further contends that the basis of Defendant's claim—the alleged communication breakdown between him and his attorney—was repeatedly addressed and mediated by the Court and can be redressed through other avenues, including direct appeal or a motion under 28 U.S.C. § 2255. *Id.* at 15.

This Court agrees with the Government and finds that Defendant's failure to timely file the present motion was not the result of excusable neglect.

First, this Court finds that there is at least some danger of prejudice to the Government. The Government has already litigated this case through trial. Granting Defendant's motion would require the Government to expend additional resources conducting a second trial. Second, Defendant waited over four months to file this motion for a new trial, which has caused a delay in Defendant's sentencing. More importantly, this Court finds that the third and fourth factors weigh heavily against Defendant. Defendant contends that he could not have timely filed this motion due to the breakdown in communication with his attorneys. However, as addressed further below, any conflict between Defendant and his attorneys was of his own making. The record in this case does not reflect unethical behavior on the part of Defendant's attorneys, and the ability to communicate with his attorneys and file a motion for a new trial was well within Defendant's control. Likewise, this Court finds that Defendant has not acted in good faith. Defendant has repeatedly refused to communicate with his attorneys, without providing any reasonable explanation for this position. Accordingly, this Court finds that Defendant's failure to file a timely new trial motion is not due to excusable neglect.

**2. Newly Discovered Evidence**

This Court must still determine whether this motion is based on newly discovered evidence. If a motion for new trial is based on newly discovered evidence, the deadline is extended to three years. Fed. R. Crim. P. 33(b)(1). To obtain a new trial based on newly discovered evidence, a defendant must meet the following requirements:

> "(1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to

> the issues involved; and (5) must be such as, on a new trial, would *probably* produce an acquittal.
>
> *Steel*, 759 F.2d 706, 713 (9th Cir. 1985) (citations omitted).

According to Defendant, "at trial, the government witnesses disclosed that [Defendant's home] was seized the entire time from [D]efendant's arrest through execution of the search warrant." ECF 154 at 24–25. Defendant argues this constitutes newly discovered evidence. *Id.* This Court disagrees. This Court need not look any further than the face of Defendant's motion to conclude that this information does not constitute newly discovered evidence. Defendant concedes that this information became known to Defendant *at trial*, not discovered *afterwards*. *Steel*, 759 F.2d 706, 713 (9th Cir. 1985) ("It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after the trial . . . ."). Moreover, this information is not material to Defendant's conviction and would not likely have produced an acquittal. Accordingly, Defendant's motion for a new trial is time-barred.

**B. Merits of Defendant's Motion**

Even if this Court were to consider the merits of Defendant's claim, Defendant is still not entitled to a new trial.

**1. Right to Counsel**

Defendant argues that there was a complete breakdown in the attorney-client relationship which resulted in a denial of his Sixth Amendment right to counsel. ECF 154 at 2. The Government responds that Defendant was afforded effective counsel in this case, and Defendant's behavior indicates he will antagonize or cease communication with any attorney who refuses to file frivolous motions or make meritless legal arguments on his behalf. ECF 161 at 15–16.

The Sixth Amendment guarantees defendants in criminal cases the right to "adequate representation." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). It does not guarantee a "meaningful relationship" between a client and his attorney. *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (*quoting Morris v. Slappy*, 461 U.S. 1, 14 (1983)). "However, forcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to a constructive denial of the Sixth Amendment right to counsel." *Id.* (*citing Brown v. Crayen,* 424 F.2d 1166, 1170 (9th Cir. 1970)).

"An irreconcilable conflict . . . occurs only where there is a complete breakdown in communication between the attorney and client, and that the breakdown prevents effective assistance of counsel." *Id.* (*citing Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000)).[1] "The failure to raise meritless legal arguments does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982). The Ninth Circuit has held that a complete breakdown of communication may occur "even where counsel is providing competent representation"—but only in "extreme cases." *Stenson*, 504 F.3d at 887. To determine whether a conflict is irreconcilable, courts in the Ninth Circuit analyze three factors: (1) the adequacy of the inquiry by the trial court, (2) the extent of the conflict, and (3) the timeliness of the motions for substitution of counsel. *Id.* at 886 (*citing Moore*, 159 F.3d at 1158). This Court finds that all three factors weigh against Defendant.

**a. Adequacy of Inquiry**

First, Defendant was assigned substitute counsel to replace his first attorney, Mr. Cassino-DuCloux, even though this Court observed that the conflict seemed to have been caused

[1] If the breakdown of a relationship between attorney and client results in the "complete denial of counsel," a defendant need not show that he was prejudiced to prevail on an ineffective assistance of counsel claim. *United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir. 1998).

by Defendant's own unwillingness to work with counsel. *See* ECF 159, Ex. 4 at 30–31. Second, both Judge Hernandez and this Court (collectively, "the Court") held numerous ex parte hearings to determine the extent of the conflict between Defendant and his subsequent counsel, Ms. Perini-Abbot. *See Stenson*, 504 F.3d at 887. The Court thoroughly assessed Ms. Perini-Abbott's reasons for adopting the litigation strategy she did, *see id.*, and even appointed Mr. Kauffman as a second opinion attorney to ensure Defendant received adequate representation, ECF 70.

**b. Extent of Conflict**

Second, the Court determined that Ms. Perini-Abbott held no animus towards Defendant, worked competently on his case, and filed the appropriate motions, while refusing to make arguments that, in her professional judgment, were frivolous or meritless. The Court also found that the breakdown in communication was of Defendant's own making and that the same conflicts would likely arise with new counsel. *See United States v. Mendez-Sanchez,* 563 F.3d, 935, 942–44 (9th Cir. 2009); *United States v. Roston*, 986 F.2d 1287, 1292–93 (9th Cir. 1993). Still, at these hearings, Defendant also expressed willingness to try to work with counsel. And this Court observed that Defendant and his attorneys communicated throughout the trial and Defendant's attorneys performed not just competently, but masterfully. *See* ECF 154, Ex. 6 at 7.

**c. Timeliness of Motions**

Third, this case had been pending since January 2020. While the trial was initially continued due the COVID-19 pandemic, the record also reflects that Defendant had already been through one attorney and repeatedly expressed a desire to slow down the proceedings. Moreover, Defendant's last motion to remove his counsel, ECF 107, was filed only one week before trial, and appointment of new counsel would have significantly delayed the proceedings.

Based on this record, this Court concludes that all three factors weigh against Defendant. The conflict between Defendant and his attorneys did not amount to irreconcilable conflict

requiring substitution of counsel. Moreover, while nothing in the record suggests Defendant's attorneys were ineffective, to the extent that Defendant seeks to litigate an ineffective assistance of counsel claim, this Court also finds that issue more suitable for a post-conviction motion under 28 U.S.C. § 2255, *see Massaro v. United States*, 538 U.S. 500 (2003), or direct appeal, *see United States v. Nickerson*, 556 F.3d 1014 (9th Cir. 2009).

**2. Right to Testify**

Defendant also argues that his Fifth and Sixth Amendment rights to testify were violated because the fact that his attorneys were unprepared for him to take the stand contributed to his decision not to testify. ECF 154 at 2. The Government responds that this Court made clear that Defendant was not permitted to testify about the circumstances of his arrest or the search of his home, ECF 161 at 10, and argues that Defendant's attorneys could not ethically elicit testimony that would be false or violate this Court's order, *id.* at 20.

A defendant in a criminal case has a constitutional right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). This right is grounded in the Fifth, Sixth, and Fourteenth Amendments. *Id.* at 49–52. "Because the right is personal, it may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

Defendant's constitutional right to testify was not violated. This Court conducted an extensive colloquy with Defendant regarding his decision not to testify. This Court assured Defendant that he should not be pressured one way or the other and that his attorneys would be ordered to ask him appropriate questions on direct examination. But Defendant did not want to testify within the parameters set by this Court. Instead, Defendant made clear that he wanted to rehash issues that had already been decided and testify about evidence that had already been excluded. Defendant's attorneys were not required to elicit testimony that would violate the

ground rules set by this Court. Accordingly, this Court finds that Defendant's wavier of his right to testify was knowing and voluntary, and no constitutional violation occurred.

## CONCLUSION

For the reasons stated above, Defendant's Motion for New Trial, ECF 154, is DENIED.

**IT IS SO ORDERED**.

DATED this 29th day of December, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge